(13 App. Div. 237.)

MANDA v. ETIENNE.

(Supreme Court, Appellate Division, First Department. January 22, 1897.)

ATTACHMENT—INCREASE OF SECURITY—VALUE OF ATTACHED GOODS.
   An order increasing an undertaking will not be disturbed where the value
   of the attached goods exceeds the amount of the new undertaking.

Appeal from special term, New York county.

Action by Albert A. Manda against Emilius Etienne for breach of contract. From an order requiring additional security under a warrant of attachment, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

Hector M. Hitchings, for appellant.
Henry W. Rudd, for respondent.

BARRETT, J. This is an appeal from an order of the special term requiring the plaintiff to give additional security in the sum of $2,500 upon the warrant of attachment herein. This attachment was for $20,000, and the original undertaking thereon was for but $800. We might properly dispose of this appeal by the simple statement that such an undertaking was entirely insufficient, and that the officer who granted the attachment might originally with great propriety have required an undertaking in the additional sum which the order now complained of calls upon the plaintiff to furnish.

The plaintiff's main contention is that the special term "was wholly without jurisdiction, power, or authority to make" the order in question. He seems to overlook section 682 of the Code of Civil Procedure, where this power is expressly conferred. It is a power which is frequently exercised. Before it was thus expressly conferred, it was held to be an incident to the regulation and conduct of provisional remedies. Whitney v. Deniston, 2 Thomp. & C. 471. What the plaintiff really complains of is not the want of power, but an abuse of discretion. That is, indeed, the substance of his argument. But this complaint is equally unfounded. Its presentation calls attention to the plaintiff's own attitude, which is certainly not lacking in boldness. He obtained this attachment for an alleged breach of the defendant's contract to sell and deliver to him certain bulbs. The bulbs were to be shipped by the defendant from France, and were to be paid for by the plaintiff here (immediately after inspection) by accepting drafts at three and four months for the contract price. Some of the bulbs were shipped, and these bulbs in due course reached the defendant's agents in this city, Messrs. Sheldon & Co. Other bulbs were shipped, and the bills of lading therefor were in the hands of these agents when the attachment was issued and served. The disagreement was about the contract price. The plaintiff claimed that the drafts which he was called upon to accept were 40 per cent. in excess of the contract price. Sheldon & Co. were unwilling to deliver the goods or the bills of lading without acceptance of the specific drafts which the defendant had

forwarded. Thereupon the plaintiff brought this action, and he at once obtained an attachment against the defendant as a nonresident for the sum of $20,000. This was a remarkable sum under the circumstances. It was made up, not of the difference between the contract price of the bulbs and the sum required to obtain them in the market (the plaintiff deposing that they could not be obtained in the market), but of the difference between such contract price and the price at which the plaintiff had contracted to sell them to his customers; in other words, of his prospective profits. But that was not all. The plaintiff claimed but $10,000 for these profits. His further claim was for speculative and unliquidated damages to the amount of another $10,000. This is the wording of his affidavit upon the latter head:

"And plaintiff further states that he will suffer other and further damage by reason of his inability to procure bulbs in the market and to supply and make good his contracts with his customers, plaintiff will lose trade and custom and will be amenable to damages and actions for the same, and will suffer in his good name and reputation, and in his trade, to the amount of $10,000."

It is plain that the amount for which this attachment was issued was grossly excessive. With its validity, however, we have at present no direct concern. It was served upon Sheldon & Co., who then had in their possession 102 cases of these bulbs, and the bills of lading for 568 other cases. Five days before it was issued, the plaintiff's attorney wrote to the defendant abroad, threatening the sale of the bulbs under a court order, as perishable property, unless he consented to their delivery to the plaintiff at what was asserted to be the contract price. "You can easily imagine," says the attorney in this singularly clear note, "what they will bring upon such a sale. You will find that, instead of being paid for your bulbs, every one of them will be sold to pay damages, and you will lose the bulbs and their price and a profitable customer." Of all this, except, possibly, the latter characterization of the plaintiff, the defendant was undoubtedly convinced by this professional assurance. It was not at all intended as a threat, we are told. It simply outlined "the attorney's idea of what such a proceeding would accomplish in a business way." The result, however, rather more than outlines what the letter accomplished in a business way. After much cabling and hopeless efforts to preserve the status quo, Sheldon & Co., by the defendant's direction, turned over to the plaintiff all the attached property and the goods covered by the attached bills of lading. This was with the understanding that the defendant would sail at once for this country (which he did), and that a settlement should be effected upon his arrival. Shortly afterwards the defendant arrived, but the negotiations for a settlement failed (the defendant, as usual, failing to recognize the plaintiff's moderation); and he returned to France minus his traveling expenses, and without either bulbs or money. Thus, the plaintiff has the bulbs, for which he has not paid, and, in addition, he has his action for $20,000 for failure to deliver these self-same bulbs. The defendant, however, has his experience of the simplicity and directness of our judicial procedure.

The special term, upon these facts, might well have increased the security to the full value of the goods which this nonresident plaintiff has thus managed to capture. These goods were turned over to him either in fulfillment of the contract, or as custodian (in place of the sheriff) pending this action for the breach. If the former, this action must fail, at least in its most essential features; for how can the plaintiff obtain substantial damages for the breach of the contract after he has accepted the goods in fulfillment? As, however, the plaintiff is steadily proceeding with this action, and, indeed, exhibits a marked aversion to stipulating to vacate his attachment, it is evident that he insists upon substantial damages for the breach, and consequently holds the goods as security for any judgment he may obtain herein. The least that the court could do, therefore, was to require him to give security for the value of these goods, under penalty of vacating his attachment. This the court did not do; but the defendant has not appealed upon the ground that the rendered amount was still insufficient. If he had done so, we might have required more adequate security. As it is, we can only affirm the order.

The order appealed from should therefore be affirmed, with $10 costs and disbursements. All concur.